UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| PATRICK A. JONES, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 6:09-CV-235-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM** |
| ERIC WILSON, Warden, | ) | **OPINION AND ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

Patrick A. Jones is currently in the custody of the Federal Bureau of Prisons ("BOP") and confined in the United States Penitentiary ("USP")-McCreary, in Pine Knot, Kentucky. He has submitted a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and has paid the District Court filing fee. He challenges several prison disciplinary convictions which were obtained against him and he claims to have exhausted the administrative appeals prior to bringing this action, as required by *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam). The Petitioner's allegations are currently before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002).[1]

**I.**

The Petitioner seeks reversal and expungement of a total of five BOP disciplinary

---

[1] As Jones is appearing *pro se*, his Petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his Petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court may dismiss the Petition at any time, or make any such disposition as law and justice require, if it determines that the Petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

convictions, the first four of which occurred at the USP-Beaumont, in Texas, prior to his transfer to USP-McCreary. He has submitted a Petition, Amended Petition, and exhibits attached to the Amended Petition, all of which uniformly describe the circumstances of the complained-of convictions. [Record Nos. 2, 6.] He claims that all were flawed, his most common complaint being that he was not afforded due process in the hearings on the charges. For the reasons set forth below, Petitioner's claims with regard to four of the convictions will be dismissed *sua sponte*, and the warden will be instructed to respond to the claims made about the remaining conviction.

## II.

A district court's role in reviewing a disciplinary conviction is extremely limited. Under *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985), a disciplinary conviction must be upheld as consistent with due process so long as there is "some evidence" to support the decision. The Court has no authority under the guise of due process to review the resolution of factual disputes in a disciplinary decision; a district court merely ensures that the disciplinary decision is not arbitrary and does have evidentiary support. *Superintendent,* 472 U.S. at 457. "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Even meager proof will suffice. *Id.*

**1. Incident Report No. 1302709.** On January 18, 2005, Petitioner alleges, he was attacked by another inmate and he hit back only once, just to deflect the attack. Yet in Incident Report No. 1302709, Petitioner was charged with the BOP offense of fighting. Petitioner went before a Disciplinary Hearing Officer ("DHO") on January 25, 2005, in a disciplinary proceeding which was purportedly lacking in due process protections. He was convicted of

fighting and sanctioned with thirty days in disciplinary segregation. Petitioner exhausted the BOP's administrative appeals scheme in Administrative Remedy No. 472071, but the incident evidently remains on his record, despite his being told by the DHO that he would expunge Petitioner's conviction if he kept clear conduct for a year.

This conviction will not be subjected to due process analysis. The Court begins with what process was due the Petitioner. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court of the United States held that a prisoner is entitled to certain procedural due process protections if he or she is faced with either the loss of GCT or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Only then does the Supreme Court require the minimal due process protections set out in *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974).

Since the penalty at issue in Incident No. 1302709 was only a thirty-day stay in segregation, there was no impact on the length of Petitioner's imprisonment and no atypical hardship on the inmate in relation to the ordinary incidents of prison life. Hence, procedural due process was not required. In fact, a thirty-day stay in segregation was exactly the penalty imposed on the prisoner in *Sandin,* and the Supreme Court specifically found that penalty not to be atypical, hence not triggering due process procedures required by the Constitution.

Also as to this conviction, the record shows that before the DHO hearing and later, at the hearing, the Petitioner admitted to fighting. He claims that he was fighting back in self defense, the other prisoner having struck him first – but he was fighting nonetheless. Further, even if the staff reneged on a promise to Jones about the expungement of this conviction, this claim would still not cognizable because there is no record of his pursuing such a claim to exhaustion

3

administratively. For these reasons, this conviction will not be examined. Jones' purported claims springing from Incident Report No. 1302709 will be dismissed *sua sponte*.

**2. Incident Report No. 1619547.** On June 29, 2007, "USP Beaumont was locked down due to an incident of violence," and during that time, Petitioner's cell, which was shared by another prisoner, was searched. The officers found "seven pieces of metal (two with sharp points) inside the light fixture." Petitioner explains several reasons that he decided to confess to ownership of the items, one reason being to spare his cell-mate, who had medical problems, from being subjected to any adverse action. Additionally, on July 18, 2007, Jones went to the DHO hearing and there he swore, "I accept responsibility for the offense." He was found guilty of Possession of a dangerous weapon and sanctioned with the loss of forty-one days of good conduct time and fifteen days in disciplinary segregation.

Jones claims to have exhausted the administrative appeal procedures, Administrative Remedy No. 472071, despite its being interrupted by his transfer from the locale of the offense to USP-McCreary. However, the attached response from the last level of appeal was not a denial based on the merits of his appeal but was a rejection notice based on the appeal's being untimely when received in the national office. Petitioner suggests that the tardiness was the BOP's fault in slowly responding administratively and/or in transferring him in the midst of the appeal process.

There are two reasons that this claim will be dismissed *sua sponte*. First, the merits of the Petitioner's appeal to the BOP's National Office were never heard. When that office rejected and returned Jones' appeal to him as untimely, it told him how to cure the problem if the transfer and/or tardy mail deliveries caused the delay. "You need to provide staff verification on BOP

letterhead documenting that the untimely filing of this appeal was not your fault." [Group Exhibit B.]

There is no allegation or exhibit in this record going to show that the Petitioner made any attempt to cure the problem in conformity with the BOP's instructions so as to obtain a response from the National Office. Therefore, he did not fully exhaust the BOP process with regard to this conviction, and this failure is fatal to litigating his claim here. As aforestated, federal prisoners are required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241 or the action must be dismissed.

Additionally, even had the filing of the last appeal been timely or the time deficiency cured, so that the administrative process was concluded, and even had the National Office still denied Petitioner's appeal, the fact remains that there is evidence in the record to support the conviction. The Petitioner *admits* that he decided to take the blame to save his cellmate from taking the blame, and he *admits* that at the hearing he stated, "I accept responsibility." This is clearly "some evidence" of his guilt sufficient to support the conviction. Thus, Plaintiff has failed to state a claim upon which the Court may grant the relief requested, and the Court may not proceed to pronounce an independent opinion. This claim, too, must be dismissed.

**3. Incident Report No. 1716824.** After two prisoners were murdered and a guard purportedly assaulted him, the following is alleged to have taken place:

> One SHU Lieutenant wrote Incident Report # 1716824 (Threatening Another With Bodily Harm/Encourage A group Demonstration/Assaulting Any Person (Attempted)/Refusing to Accept a Program Assignment/Refusing to Obey An Order Of a Staff Member) against petitioner with partial truths and false reports and leaving out other important events.

[Memorandum, Record Nos. 2 and 6 at 12.] However, what actually happened, purportedly, was

a skirmish with guards, which Petitioner describes as an assault on him by BOP staff. As to his due process claims, Petitioner alleges that the DHO's final report falsely states that Petitioner refused to come to the DHO hearing on April 22, 2007, and refused to sign a waiver of appearance, when in reality, he was not given notice of the hearing or a chance to refuse to sign a waiver of appearance.

The administrative appeal documents show that Petitioner was originally charged with five offenses. After the hearing was held without him, the DHO found Petitioner guilty of three of the offenses (assault, Code 224; threatening Another with Bodily Harm, 203; and Refusing a Program Assignment, Code 306), but expunged the other two charges (Encouraging a Group Demonstration, Code 212, and Refusing an Order, Code 307). For the three convictions, Jones was sanctioned with the loss of a total of fifty-four days of good time, restriction of privileges, and a disciplinary transfer.

The appeal of these convictions, Administrative Remedy No. 500585, was unsuccessful at all levels. The BOP's National Office denied the last required appeal with an opinion containing the following conclusions:

> . . . Given the evidence and documentation, the final decision reached by the DHO was reasonable. We also determined your due process rights were substantially respected and preserved. You raised several elements of contention in this regard. However, the record refutes each point with which you attempted to show a fault. We conclude the sanctions imposed were appropriate and consistent with the parameters identified in Chapter 4 of the PS.[2]

[Exhibit C, final opinion in Administrative Remedy No. 500585, dated January 14, 2009.] As the Petitioner has raised issues of the constitutionality of the conviction whereby he lost two

---

[2] Program Statement 5270.07, *Inmate Discipline and Special Housing Units.*

months' time toward his sentence, thus extending the time which he must serve. Because he exhausted this claim before filing this lawsuit, the Court will direct the Warden to respond to this claim.

**4. Incident No. 1745223.** Petitioner next complains of a conviction for Possession of Anything not Authorized. He alleges that at USP-Beaumont prisoners were permitted to possess any number of postal stamps, and the staff there inventoried and shipped his possessions, including the stamps, to USP-McCreary. Upon arrival and an inventory at the new location, however, the BOP confiscated the stamps and wrote this incident report charging Jones with Possession of Unauthorized Item, because prisoners are limited to possession of only "a total value equivalent to 60, 1st class" stamps. As Petitioner had 971 stamps and admitted that they were all his, a Unit Disciplinary Committee found him guilty of the possession offense, as charged. He was punished with confiscation of the stamps and the loss of telephone privileges for a period of thirty days.

Petitioner again appealed, Administrative Remedy No. 498788. This appeal was also denied at all levels. The National Office spokesman found that Jones had failed to "offer any evidence suggesting that staff permitted you to acquire and maintain possession of such a large quantity of postage stamps," to support the defense that he was legally permitted to possess so many.

Like the first claim herein, this one does not necessitate the due process analysis. This is because the penalty imposed neither affected the length of his sentence, such as the loss of good conduct time; nor did it impose an atypical hardship for prisoners who already have very circumscribed telephone privileges. *See Sandin v. Conner*, 515 U.S. at 484. Again, the

Petitioner admitted that the prohibited items were his.  The Court will dismiss this claim.

**5. Incident Report No. 1720206.**  This incident occurred during the same week as Incident Report No. 1716824, discussed *infra*.  This report charges Petitioner with Refusing to Provide a Urine Sample.  The DHO hearing was held on the same date as that for Incident Report No. 1716824, April 22, 2007, and the DHO decision, like that in No. 1716824, shows that Jones refused to attend.  In his absence, he was found guilty and sanctioned with the loss of forty days good conduct time and the loss of certain privileges.

In the appeal of this conviction, Administrative Remedy No. 500586, Jones again contended that he did not have notice of a hearing or a chance to refuse to attend or an opportunity to sign a waiver.  Petitioner writes, "Both appeals of the DHO Reports (#1716824 and #1720206) supplied the same arguments, that petitioner was denied Due Process at the April 22, 2007 DHO hearing, to the same Regional Office and was signed by the same person."

This appeal ended differently from that generated by #1716824, however.  On November 5, 2008, the Regional Director "partially granted" his appeal, and the matter was remanded for a rehearing before the DHO.  Claiming that he was not satisfied with this grant, the Petitioner wrote to the National Office.  That Office responded on February 18, 2009, with a note "for informational (sic) only," stating that the rehearing had not yet been had.  The response also advised Petitioner that after the rehearing and a new DHO decision, "you may reinstate any contentions you have with the rehearing decision" through the same administrative remedy process.  Petitioner does not, however, state that he went through a rehearing or received a new decision which was against him or that he appealed a new decision.

Thus, whether Petitioner committed the offense described in Incident Report No.

8

1720206 has not yet been determined. Petitioner must await another adjudication in the BOP disciplinary process, another decision against him, and another trip through the appeal process before he may bring this claim to Court. As the Petitioner was informed earlier in this case, the law is clear that federal prisoners are required to exhaust administrative appeals before filing a habeas corpus petition under 28 U.S.C. § 2241. *Little v. Hopkins*, 638 F.2d at 954. As this claim is not yet decided, its presence in this lawsuit is premature, at best. It will be dismissed without prejudice to Petitioner's refiling at some future time.

### III.

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) All claims about the following incident reports are **DISMISSED**, *sua sponte*: Incident Report No. 1302709; Incident Report No. 1619547; Incident Report No. 1745223; and Incident Report No. 1720206.

(2) The Clerk of the Court shall serve by certified mail a copy of the Petition and this Order upon Respondent Warden Eric Wilson, the Attorney General for the United States, and the United States Attorney for the Eastern District of Kentucky.

(3) Within thirty (30) days of the date of entry of this Order, the Respondent shall answer or otherwise defend Petitioner's claims regarding Incident Report No. 1716824. Respondent shall also file with his answer all relevant documentary evidence which bears upon the allegations contained in the Petition.

(4) Upon entry of a Response herein or upon the expiration of said period of time, the Clerk of the Court shall notify the Pro Se Office.

(5) The Petitioner shall keep the Clerk of the Court informed of his current mailing

address.  ***Failure to notify the Clerk of any address change may result in a dismissal of this case***.

(6)     For every further pleading or other document he wishes to submit for consideration by the court, the Petitioner shall serve upon the Respondent, or, if appearance has been entered by counsel, upon the attorney, a copy of the pleading or other document.  The Petitioner shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to the Respondent or counsel.  If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of a copy, as above, the document will be disregarded by the Court.

This the 1st day of October, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge